1-3-4-2-5-3 Robert Williams Jr v. Marc Houk Arguments not to exceed 30 minutes per side Mr. Ricotta for appellant One second please Okay, thank you Okay, thank you May it please the court, my name is John Ricotta Along with Mr. Kelleher, I represent Mr. Williams as habeas consul I'd like to reserve five minutes for rebuttal You certainly may, and you may proceed Thank you, your honor  We have proposed three issues for the court And they all involve consul The first issue that we raised was Whether Mr. Williams invoked his right to consul under Edwards The second was whether there was a no involuntary and intelligent waiver under Miranda And the third was the ineffective assistance of consul during the mitigation phase Now the first issue that we raised was the Edwards issue And the Ohio courts and the United States District Court Concluded that the record did not establish that Mr. Williams unambiguously invoked his right to consul under Edwards And I think if the panel looks at the record It was clear that Mr. Williams invoked his right to consul Which we wouldn't even have to get into the Miranda issue When? When? I believe he invoked his right to consul When he ran from the police, from the Toledo police In the early morning of the 22nd of February And he ran for one half hour, and you know where he ran to To Alan Penniman's house And Alan Penniman was the attorney that he had retained And talked to Sergeant and Detective Beavers Two days earlier said he was going to retain consul And turn himself into the police station But what case has said that you can unequivocally invoke the right to consul by action as opposed to words? Well I think that the District Court and the Ohio Supreme Court Misunderstood McNeil v. Wisconsin When they talked about anticipatory invoking of your right to consul Mr. Williams was in custody This was a custodial situation When they put the handcuffs on him next to Alan Penniman's house And Alan Penniman is the attorney that he retained He's cuffed, he's in custody The interrogation is imminent There's nothing anticipatory about that In McNeil, the situation was one where a person in his Sixth Amendment right to consul Said he was being charged with robbery I believe And there was a host of other robberies that he hadn't been charged with So it's uncharged conduct And he said, well, I want to invoke my right to consul As to those Fifth Amendment uncharged cases Well, the Supreme Court said it was too early to raise that You know, the Sixth Amendment and the Fifth Amendment are distinct But this is not the situation we have here That's why the District Court erred and the Ohio Supreme Court Was erroneous in the fact that they said it was anticipatory But it wasn't anticipatory So let's talk about the situation here Mr. Williams ran toward Mr. Penniman's house The record shows that And he, as I understand it, while he was being arrested, restrained, things of that nature Yelled out Mr. Penniman's first name Is that correct? I think, on the cross-examination and the motion to suppress With Detective Murek, I believe The question was asked, did he yell out Alan Penniman's name? And he said yes So I think he gave the complete name So put those two things together In your view, that's a sufficient invocation of the right to consul? You're saying in the circumstances? If you look at the totality of the circumstances Here's a man that indicates he's coming in with consul He's seen by the police come towards him He runs, he runs to his attorney's house Okay, I think that's indicative that he wants his right to consul He then, while he's being handcuffed, says Alan Penniman, that's my attorney He wants to talk to him at the scene Penniman then goes up and talks to Sergeant Forrester And says, here's my card I'm Mr. Williams' consul I don't want you to talk to him until I get there Now I understand, certainly, that he can invoke Mr. Williams' rights But then he goes to the police station And as soon as Williams gets to the police station Forrester then contacts the chief prosecuting attorney Mr. Wiglin, I believe his name was They have a conversation And Williams is never told that Penniman is in the building Now, I understand in Moran v. Bourbon That you don't have to tell him the totality of the circumstances Surrounding whether he should invoke his right to consul I understand that case law But this is distinctly different Because this is not a situation where A third party calls and says I want to represent Mr. Penniman This is Mr. Williams This is Mr. Williams being cognizant of the fact That Penniman is on the scene That he's going to come to the police station for him And then he's led to believe That he has no constitutional right to Mr. Penniman When has he led to believe that he has no constitutional right to speak to him And when does he invoke counsel in the context of the interrogation? Well, if you're not set that he invoked it under Edwards Then as soon as he gets to the police station, Toledo police station He's taken immediately to the interrogation room Where the interview begins If you look at the tape, which is all tape recorded If you look at the transcript and the tape Before he is Mirandized He says, why did you run off my attorney? And says, I don't want to do this Now, I think those statements Taken in the complete totality of what just had occurred A chase running to Penniman's house And now he's definitely in custodial interrogation He says, why did you run off my attorney? Now, should he have been told at that point That his attorney is downstairs And waiting for two hours to see Mr. Williams? I believe that he should have been I know all the facts and circumstances are different in cases But what Supreme Court case do you think Most closely supports your argument? I think Edwards And I think Davis says Was it ambiguous or was it ambiguous? Well, I think it's clear by his actions and words That he wanted Alan Penniman He immediately says, I'm going to speak to you guys Doesn't he then immediately say he's going to speak to them? Well, you know, if you look at the Robertson case Robertson v. Arizona It says, if, the Supreme Court says If a person invokes his right to counsel There should be no further Mirandizing or questioning by the police It should cease automatically I mean, that's a constitutional right That we take very seriously And I know this panel does I mean, they shouldn't have brought him up It was clear, I think, from the totality of circumstances That he invoked his right to counsel They shouldn't have even brought him up to that interview room And started the Mirandizing What about the argument that it's harmless That there's no reasonable probability That he would have been acquitted even without his statements? Well, you know I always find it difficult to look back retrospectively And say, what impact would this have? But we're talking about a death penalty case We're talking about the fact that I only have to Not I Counsel only would have to convince one juror To avoid the death penalty It's important to note that Maybe in the case in chief As far as the guilty innocence verdict That part of the case may have been difficult But certainly this hour and 20 minute Confession, quote, tape interview of Williams Went to the jury in the mitigation phase Which leads me to the mitigation phase Which I think was a Totally incompetent on part of the trial counsels In their presentation of the mitigation If you look at the mitigation And you look at what the Ohio Supreme Court says It says Part of our argument was The putting on of Dr. Lane Lack of the prison records The failure to develop the torture and child abuse that he had And more importantly Whether we should have had a sexual evaluation And expert on that area Because Dr. Lane Opened up a whole Area that he wasn't an expert in As far as the sexual deviancy of the defendant You have a case that On its face When the first time you pick up the file And you go to defend this man There's an allegation of rape of an 88 year old woman Which would lead me to believe that There are some psychological problems If these allegations are true But what is Dr. Lane He talks about It sounds, if you read the argument made by the state It sounds like Dr. Lane is their expert Well let's, so I think we're moving on to the Well I just thought it was a good Right, so let's talk about that Why was the state court's determination Unreasonable into AEDPA? If you read the state court's opinion The Ohio Supreme Court says But for Dr. Lane There would be little or no mitigation presented by By the defense My argument is And they kind of characterize it as That was on direct appeal, right? Yes, to the Ohio Supreme Court But we're really talking about A different claim, the claim that was on post-conviction That whatever you want to say about Presenting Lane's testimony It was ineffective not to at least Also have That's right And that was an affidavit by Dr. Brown I believe And the fact that if you look at the record It indicated that At least Consul was cognizant of the fact that he Probably should have had one Because there's testimony that He contacted Dorian Hall From the public defender's office who indicated that He had been involved in over 150 cases And that he felt That the person with that expertise Was necessary for good mitigation presentation And he said he would assist in that But Consul never asked for a continuance Did he ask for one and then Mr. Williams said I don't want one? No, I don't recall anything in the record Where he asked for a continuance Well where was When was it that The trial court asked Mr. Williams To waive his speedy trial rights? That was, I think at some point he wanted to fire Consul Right But I don't think that had anything to do with The retention or necessity for Consul To have more time to get an expert No, I don't think it did either But the issue of the continuance came up And I think that Williams said no, I don't want a continuance He may have, but you know As trial Consul, you know Who's driving the cart? Okay I mean I can't Right, I mean he never said I need a sex expert Mr. Williams? No, I mean Consul never said that No, he never indicated that But I think he was cognizant of it Why do we not have How come on the The showing in the post-conviction motion Why was there no affidavit from trial Consul Or anything That would show that Consul had not adequately explored this? I wasn't Consulate for his post-conviction I really couldn't But isn't it a problem that we don't That there are conceivable strategies There are conceivable strategic reasons why Trial Consul would not have pursued this other defense Granted, and I think Every time you look at a Strickland case Even if they say it's two prong And one is whether it was deficient performance And then whether it was prejudicial It seems to me that The easiest thing to say from the state courts Or the general thing that the state courts say Oh, it was strategic Well, you know I mean anything can be strategic It doesn't mean that it's effective mitigation If you look at the mitigation It's 120 pages Two sisters and the mother And the mother says that the family is screwed up Because all the men were given some medication To treat them for syphilis I mean, she was way off base The two sisters talked about the fact That he had been tortured and sexually abused by his father But nobody developed that theory The only thing you have is Dr. Lane saying He's a hardened, gutless criminal That he'd be a threat to the people in the prison Doesn't get his prison records to show That he possibly wouldn't be a threat to the prison population Says that any further medical treatment would do him no good That's why I'm saying It seemed like he was the prosecutor's witness Now, granted This is a difficult case by anybody's perspective The facts are horrendous I understand that But that only makes it more important for you As trial counsel I'm not saying forget about the trial aspect But concentrate on the mitigation Because you know there's a good likelihood That that's where you're going to end up Well, you know, even though Trial counsel didn't call a sexual abuse expert Dr. Lane appears to be an eminently qualified psychologist He talked about the history and background of Mr. Williams He went into his upbringing And how the system had failed him And didn't have discipline I mean, that was maybe not a winning strategy But is it not arguably at least a down strategy at the time? Wouldn't you agree with me That it should be You could have an expert in any area Doesn't mean he's the right expert for the case It seems to me that And I'm not knocking I think you're absolutely correct That Dr. Lane had good qualifications Now, whether he was the right witness for the state Or the right witness for defense May be a whole different call But it seems to me And I've done quite a few of these cases In the trial level also That you should know Prior to putting your witness on the stand What you anticipate he's going to say I mean, you object largely There are several statements that Dr. Lane made That you view as being extremely harmful In terms of how he characterizes When you have a jury and you tell them He's a hardened, gutless criminal That can't do any good with any further treatment And he's probably a Could be a danger to the prison population That doesn't leave you a whole lot of alternatives What do we do about the fact that we don't know why that happened? We don't know if it's because counsel was ineffective Well, you know I think it's difficult A lot of these cases I've found over the years And I don't know for the fact for this case But sometimes your trial counsel On these chair cases End up going into politics They end up being judges I had that on two or three of the cases prior to this Now I don't know if that's the situation with this case But sometimes it's difficult to get an attorney to say That his actions were relied on incompetence It's just a difficult thing for them to admit I mean, I think that may be the reason I'm sure they were contacted Now there's other attorneys that will Do whatever they can for the client Say, you know, hopefully if it'll help the client Maybe I did screw up But there's probably a bigger percentage That have a problem doing that So I think that it's incumbent upon us then To look at the facts and assess them Is it the case that This was an argument the state made in state proceedings That had the defense pursued The Dr. Brown line of reasoning More evidence about his sexual misconduct growing up Would have come before the jury And that that could have been a real problem Well, here's the thing It came in anyway Because all his medical records came in And then that exposed Dr. Lane to cross-examination By the state And he ended up conceding When I think he had to That the client was a sexual deviant So it was a fact that you couldn't hide And if you're a trial counsel And you thought you could hide that fact You're being foolish or incompetent That's why I think Dorian Hill was saying You're going to need this at some point Because it's going to come out It's really the strength of the state's Aggravating circumstance I mean, that was the most If you look at the argument  You have the breaking in, burglary, robbery Of an 88-year-old woman But you have the rape And I think that was the... Okay, so just focusing tightly On the aspects that you say Really form the basis For the ineffective assistance That you want us to focus on One would be Not calling the sex expert Would it also be calling Dr. Lane Or is that two sides of the same coin? I think at some point You retain Dr. Lane It looks like he's, based on his Curriculum vitae His expert would be qualified But once you talk to him You may make the decision that He's an expert I'm not going to use I'm not going to submit this report To the prosecuting attorneys So you should have at least I think he should have had Another expert lined up Now I would have never put Dr. Lane on If that was, after I prepped him That was the kind of responses I was going to get from him I mean, it just It's incompetent And then I assume what you're saying Is you can't know Which approach is better Until you have the second expert Because you have nothing to compare it to Absolutely, I mean we make those decisions Every day as trial counsel I mean, that's what we do Why was it so late? I mean, I know there was There wasn't a lot of time March to August In a death penal case Doesn't seem like a lot of time But do you have any idea Why he was Seeking the assistance so late Of the mitigation? I think that the trial court Set these parameters and deadlines And I'm not familiar with that You know, that court So I couldn't give you that response But it seemed to me that nobody That this was the way we're going to proceed And we're going to get it done In I guess three months or whatever They were doing it Where some of these cases They take almost nine months to Close to a year to get properly prepared It's not unusual Did Dr. Lane's report Go into this Heartless, gutless criminal Characterization This irredeemable criminal personality Did the written report go into that Or did he just sort of Kind of wander into this assessment? That was kind of, I think Off-the-cuff kind of remark But he never came up with a diagnosis I mean, that was part of the problem Okay, so we can't really Criticize counsel then for that Can we? Because he was apparently surprised By his witnesses' statements Well, I mean, I think That you should know If you look at Dr. Brown's affidavit In post-conviction He comes up with Almost seven different diagnoses Alcohol abuse He had been sexually abused Anti-personality I mean, he's got all the DSM sites I don't think that was the case With Dr. Lane I don't think he ever came up With a diagnosis Other than saying I reviewed these prior records And it seems to me that If he got the treatment When he was age 13 and on That he may not have been Before the court as he is today So it's sort of It was everybody else's fault That he never got his treatment It doesn't seem like Much of a defense to me Thank you Okay, thank you Mr. Mercado You'll have your full rebuttal Thank you Thank you, Your Honor May it please the Court I'm Jocelyn Lowe Here on behalf of the Warden From the Ohio Attorney General's Office I'll start briefly by addressing The ineffective assistance Of counsel arguments If that's agreeable to the panel Since that's what we Were most recently discussing And we'd ask that you affirm The district court's decision Because Dr. Lane It was reasonable for trial counsel To both employ and rely on Dr. Lane As was mentioned From his CV He was eminently qualified As an expert He's both board certified And practices in the field of psychology And had a board certification In forensic neuropsychology as well And as the state courts discussed What's happening between Dr. Lane And Dr. Brown Is a disagreement between experts There's no requirement Under any Supreme Court case law That defense counsel must Continuously speak out It's not really a disagreement I mean Dr. Dr. Lane really doesn't refute What Dr. Brown said I mean you've got Dr. Lane He comes up with Really very little Counsel apparently doesn't prepare him As a witness Because he says things That aren't in the report That are very damning But You have this whole other area Of exploration That although counsel was directed to it He doesn't do anything about So how can you say That it was reasonable To use Dr. Lane And not someone like Dr. Brown When counsel never made a choice I mean he never said This approach makes more sense Than that approach Well I don't think That there's support in the record For the idea that counsel Didn't consider a sex offense expert There's an affidavit From Dr. Lane And from Dorian Hall Stating that they were consulted And discussed The idea of having a sex offender There's absolutely no evidence All you have Is that he asked Dr. Lane If he was qualified He said no And he asked him If he knew somebody And he said no So there's absolutely no evidence That he further explored that But there's a presumption Under Strickland And under the double differential Standard of ADEPA That they used Sound trial strategy That they were acting As competence And there's no evidence To rebut that idea But all the evidence Indicates that they didn't Speak with a sex expert But pursuing a sex offense expert Could have been It's a double edged sword Because there was evidence Presented that did come out About his sex offense background But there was not Emphasis placed on That sex offense background In the way that there would have been If they would have called A sex offense expert To discuss in depth His multiple sex offenses And that background There's mention It would have been to It would have been to Evaluate And sort of come Arrive at some diagnosis That would have had Bearing on all these things Which is what didn't happen With Dr. Lane And it seems like You know You characterize Dr. Lane As an expert Which he may be But there are experts And experts And this This kind of reminds me Of sort of the difference Between You know An internist And a cardiologist The fact that this person Is an expert In general psychology And you say Forensic psychology There was nothing about that That suggested That he had expertise In this area Of sexual deviance   In forensics neuropsychology And Mr. Williams The diagnosis Made by Dr. Brown And the discussion Had by Dr. Lane Was that Dr. Lane Was an expert In forensic neuropsychology And the fact that Dr. Lane Is not that This is someone Who is simply A sex offender He has a multitude Of problems And Dr. Lane Discussed those problems And discussed how His background Impacted his His presentation In the courtroom In his diagnosis So this isn't someone Where a sex offense expert He doesn't have A narrow set of problems He has a broad set Of issues And Dr. Lane Talked about the impact That his childhood Would have on him The impact Or potential impact That some of the Brain Not brain injuries But head injuries He'd had Could have presented The impact of Failing to get treatment Early enough In his life These are areas That are more general Than a sex offense expert Would be directed to What Dr. Lane did Was talk about      Had gotten involved earlier There's a very good chance That this person Would have been A sex offender And would have been A sex offender And would have been A sex offender In fact, a probability That he wouldn't have Turned out to be The awful person That he is Correct Which is different From saying This is a person Who has done And in this last offense Did awful things     And therefore He has these triggers And this And this And this And this And this And this And this And this And this And this And he has This brain damage That makes it impossible For him to control His impulses And all of this together This is why this happened And at the time it happened He didn't have the ability To control himself I mean, that's very different testimony But that's The idea that he That Mr. Williams Is unable to control himself That's where there's a disagreement Because Dr. Lane Reviewed all the records And agreed with the previous Examiners who said That that is not Okay, how would that Even have gotten in? What? If you have an expert That says your client Can control himself And someone who says He can't Correct You put on the one That says that he can't And then it's up to the state To disprove that They couldn't have put Dr. Lane on Could they have? No, but it Okay, so Why is it Why is it relevant That they disagreed With each other? You still You go with what Makes a better defense And it's up to the government With their own expert And you can anticipate That they would have Had that expert anyway The question under Strickland Is whether it was reasonable For trial counsel To choose Dr. Lane And not to continue Pursuing expert After expert After expert It was reasonable To choose Dr. Lane How is it     Because it's more relevant To your case And he's told that By Dr. Lane And he's told that By Dr. Lane And he's told that By Dr. Lane And he's told that By someone who defends These cases On a regular basis And there's It appears that All he did Was ask Dr. Lane If he could do it Or if he knew anyone And that's all he did Why How can you make the choice If you don't have the info There's no evidence That he knows What an expert     Is that he suggested He should also pursue A sex offender And Mr. Hall Also suggested That he should Pursue a sex offender And Mr. Hall In his test I'm sorry It states in his affidavit That he discussed The slipped through the cracks Mitigation theory That was the one presented As being a possible Mitigation theory To present How do you I'm going to ask you again How do you choose     What both of them Will say That The Supreme Court Has said That the idea Of a sex offender Is that It's a It's a It's a It's a The idea Of the strategy Of a strategic choice Presumes That counsel Knows what both Choices are But there's No There's no Supreme Court Case law That says They have They have to Consult multiple Experts To even The defendant Is entitled To multiple Experts Forget multiple Experts Doctor Lane Was not an Expert On sexual Deviants You're saying It was reasonable For counsel To choose The defense That Lane Was running Slipped through The cracks Rather than The defense That Brown would've Or a sexual Deviant expert Would've But The courts You can't Choose between Two tacks Without Knowing What the Substance of Both of them Are I mean How Counsel Didn't know What the sexual Deviant expert Would say So how can he Reject that In favor of Lane If he doesn't Know what The expert Would say There's Nothing in the Record from trial Counsel to Tell us What they Talked about If they Pursued We know They There's no Indication that He spoke to Anybody Because There's nothing From trial Counsel We know They didn't Speak to Dr. Brown We know That Dr. Lane Told them I am not A sexual Abuser And we Know that He went To trial Immediately I mean The Record The Only Legitimate Inference From the Record That They Were Pursuing A trial Strategy And were Acting as Competent Counsel There would Need to Be Some Evidence That they Did not Do this There's no Evidence From them About who They consulted There's evidence They didn't Talk to Dr. Brown There's evidence They Dr. Lane Told them I'm not An expert And there's Evidence They talked To Mr. Hall About this But there's Nothing to Say that They said We're just Not even Going to Try Well they Did They asked Lane If he Knew Anybody And he Didn't Tell Lane Unless The evidence Indicates Otherwise I mean It's true We don't Have them Saying this But all The indications Are that They Asked Lane And then They Dropped It There's No way To say That From this Record Because There Would Have To Be Some Evidence In the Record To Overcome The Presumption And as Judge White Said You're Asking Us To Say That They Made A Rational Strategic Choice To Go The Route They Did And her Question To You Was What Is There To Show That They Made A Choice Between A And B When There Is No B In The Record What I'm Asking Is For This Court To Find That It Was Reasonable To Apply The Strickland Deference And To Reach The Conclusion That These Trial Council Were Acting As Reasonable When We Look At The Record Before Us When The Defendant Says To The Jury This Is A Gutless Heartless Criminal Who Is Irredeemable And Will Be A Threat And A Harm To People In Prison And This Is The Defendant's Expert It's Kind Of Hard To See How That Becomes A Effective Trial Strategy And There Is Nothing Else In The Record To Counter Any Other Positive Expert I Reread Dr. Lane's Testimony And He Said This Is A Person Who Would Become A Diminishing Threat In Prison And As He Ages He Is Not A Threat In Prison And On Cross He Said He Would Be Dangerous I Don't Recall That Specifically But There Is Something To Be Said In Ages He Is Not   In Prison And As Ages He Is Not  Threat In Prison And As He Ages He Is Not A Threat In Prison And As He Ages He Is Not A Threat In  And As He Ages He Is Not A  In Prison And Prison And As He   Is Not A Is Not A Threat   And As He Ages